IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-366

Filed: 5 April 2016

Wake County, No. 14-CVS-10671

PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., JACOB MATTHEW NORRIS, and JULIE COVELESKI, Plaintiffs/Petitioners

v.

GORDON S. MYERS, EXECUTIVE DIRECTOR of the NORTH CAROLINA WILDLIFE RESOURCES COMMISSION in his official capacity, Defendant/Respondent.

Appeal by defendant/respondent from order entered 10 December 2014 by Judge G. Bryan Collins in Superior Court, Wake County. Heard in the Court of Appeals 21 October 2015.

*Ellis & Winters LLP, by Jonathan D. Sasser and Kelly Margolis Dagger and Gerber Animal Law Center, by Calley Gerber, for plaintiffs/petitioners-appellees.*

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Susannah P. Holloway and Tamara S. Zmuda, for defendant/respondent-appellant.*

STROUD, Judge.

The Lorax speaks for the trees,[1] but the question presented by this case is whether anyone may speak for the opossums, particularly those Virginia opossums[2] ("opossum(s)") found in Clay County, North Carolina, during late December through early January each year, who may end up in captivity as the main attraction at the annual New Year's Eve Possum Drop event. Both plaintiff/petitioners and defendants/respondents[3] claim the right to speak for the opossums, but the General Assembly has passed a law which says, in effect, that no one may speak for Virginia opossums during the relevant time period. For this reason, we must dismiss this appeal as moot.

Defendant-respondent Gordon Myers appeals a trial court order denying his petition for judicial review of the final decision of the administrative law judge. The administrative law judge, in part, granted summary judgment in favor of petitioners because respondent North Carolina Wildlife Resources Commission ("WRC") had

---

[1] S*ee* Dr. Seuss, The Lorax (1971), reprinted in Your Favorite Seuss 305-36 (complied by Janet Schulman and Cathy Goldsmith, Random House) (2004).

[2] The Virginia opossum (Didelphis virginiana) despite bearing the name of another state, is actually the "official marsupial of the State of North Carolina." N.C. Gen. Stat. § 145-44 (2013).

[3] We first note that the order being appealed from notes the parties as "Plaintiffs/Petitioners" and "Defendant/Respondent[.]" For ease of reading we refer to the parties hereafter as simply petitioners and respondent(s). We further note that our appeal is from respondents "North Carolina Wildlife Resources Commission and Gordon S. Myers, as Executive Director, North Carolina Wildlife Resources Commission[.]" However, the order on appeal only addresses respondent Myers as he is the only party who petitioned the trial court for judicial review. While at times it may be necessary to refer to *respondents*, only Mr. Myers is a respondent party on appeal. However, none of these issues have any effect on the dismissal of this appeal.

"acted erroneously and failed to follow proper procedure when granting two captivity licenses to Clay Logan[.]" Because there is now a statute directly addressing the substance of this entire case in such a way that no ruling by this Court can have any practical effect on the existing controversy, we dismiss this appeal as moot.

## I.     Background

In February of 2014, petitioners People for the Ethical Treatment of Animals, Inc., Jacob Matthew Norris, and Julie Coveleski filed petitions against WRC and Gordon Myers as Executive Director of WRC for a contested case hearing, challenging the WRC's issuance of certain captivity licenses to Mr. Clay Logan for 2013 and 2014 and its failure to revoke these licenses, arguing in part that

> Respondents exceeded their statutory authority and acted unlawfully by issuing Captivity Licenses (Permit Number 13CP-159) to Clay Logan for 2013 and 2014, to possess and exhibit a live opossum. The mandatory requirements for issuing a Captivity License, set forth in N.C.G.S. 113[-]272.5 and related regulations, were not met, since Respondents did not make the required determination – and could not have made the required determination, based on the evidence before the Respondents at the time the licenses were issued -- that (a) issuing the licenses was in the interests of the humane treatment of the animal; (b) Logan was qualified to keep an opossum; and (c) issuing the licenses was appropriate under the objectives of wildlife resources conservation. In addition, WRC issued the Captivity Licenses upon improper procedure, by failing to comply with inspection and verification requirements that must be met before the Captivity Licenses were issued.

In essence, petitioners argued that respondent WRC erred in issuing opossum licenses to Clay Logan because in violation of the captivity license Mr. Logan was treating the animals inhumanely by "dropping" an opossum in a box on New Year's Eve in a rural replication of the dropping of the crystal-festooned ball in New York City's famous Times Square New Year's Eve celebration. North Carolina General Statute § 113-272.5 governs captivity licenses and requires the "humane treatment of wild animals." N.C. Gen. Stat. § 113-272.5(a) (2013).

In August of 2014, after considering various pending motions, the administrative law judge ("ALJ") determined that summary judgment should be granted in favor of respondents as to the issue of revocation because (1) Mr. Clay's 2013 license had already expired and (2) Mr. Clay had surrendered the 2014 license which he no longer needed because the General Assembly ratified a law which "eradicated the effects of any violations at issue[.]" Yet the ALJ also ruled that, as to the propriety of the issuance of the licenses for 2013 and 2014, summary judgment should be granted in favor of petitioners as "the agency acted erroneously and failed to follow proper procedure when granting two captivity licenses to Clay Logan[.]"[4]

In August of 2014, respondent Myers requested judicial review of the ALJ's decision. On 10 December 2014, the trial court denied respondent Myers' petition for

---

[4] It is unclear why the ALJ did not consider the claims regarding issuance of the licenses moot based upon the newly enacted law, but the substance of the ALJ opinion is not before us on appeal.

judicial review. Respondent Myers appeals the denial of his petition for judicial review.

## II. Appeal

Respondent Myers argues that "the relief sought in the petitions is barred by sovereign immunity" and "petitioners are not a 'person aggrieved'" in order to avail them of the limited waiver of the sovereign immunity doctrine[.]" (Original in all caps.) Petitioners argue that respondent Myers is collaterally estopped from challenging whether they "are persons aggrieved[,]" and in the alternative, they indeed "are persons aggrieved[.]" (Original in all caps.) Both sides raise passionate and interesting legal arguments, particularly regarding standing, or who has the right to challenge the issuance of a wildlife captivity permit in this situation. But all of the issues raised in this appeal have been rendered moot.

The legislature enacted Session Laws 2014-7 which provides:

> AN ACT TO EXEMPT CLAY COUNTY FROM STATE WILDLIFE LAWS WITH RESPECT TO OPOSSUMS BETWEEN THE DATES OF DECEMBER 26 AND JANUARY 2.
>
> The General Assembly of North Carolina enacts:
>
> SECTION 1: No State statutes, rules, or regulations related to the capture, captivity, treatment, or release of wildlife shall apply to the Virginia opossum (Didelphis virginiana) between the dates of December 26 each year and January 2 of each subsequent year.
>
> SECTION 2: This act applies only to Clay County.

SECTION 3: This act is effective on and after December 30, 2013.

In the General Assembly read three times and ratified this the 12th day of June, 2014.

N.C. Sess. Laws 2014-7.

Session Laws 2014-7 was the law in effect when the ALJ made its August 2014 final decision and also when the trial court denied respondent Myers's petition for judicial review.[5] *See id.* This case arises from the 2013 and 2014 licenses, and Session Laws 2014-7 exempts Virginia opossums from the "rules[] or regulations" which would include captivity licenses and treatment of opossums for those years during the relevant dates in Clay County, so any questions as to licenses for those years are moot. *See Roberts v. Madison County Realtors Assn.*, 344 N.C. 394, 398–99, 474 S.E.2d 783, 787 (1996) ("A case is 'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy.") In summary, Mr. Logan did not need to have a captivity license at all for the 2013 or 2014 Possum Drop events, and any defect or irregularity in the issuance of those captivity licenses is now irrelevant.

Of course, New Year's Eve comes every year, and with it comes the annual Possum Drop celebration and the specter of the capture of more opossums to star as

---

[5] Session Laws 2015-155 repealed Session Laws 2014-7 as of 20 July 2015; as of 11 June 2015, a similar exemption to Virginia opossums applies to the whole state and not just Clay County. *See* N.C. Gen. Stat. § 113-291.13, Editor's Note (2015).

the main attraction. But the issues presented are still moot because the North Carolina law continues to exempt opossums during this time period from the protections of any "rules[] or regulation[.]" N.C. Gen. Stat. § 113-291.13 (2015). This issue is not "capable of repetition yet evading review[,]" *Ballard v. Weast*, 121 N.C. App. 391, 394, 465 S.E.2d 565, 568 (citation and quotation marks omitted), *disc. review denied and appeal dismissed*, 343 N.C. 304, 471 S.E.2d 66 (1996), because a captivity license is no longer required statewide for the Virginia opossum "between the dates of December 29 of each year and January 2 of each subsequent year." N.C. Gen. Stat. § 113-291.13. North Carolina General Statute § 113-291.13 provides: "No State statutes, rules, or regulations related to the capture, captivity, treatment, or release of wildlife shall apply to the Virginia opossum (Didelphis virginiana) between the dates of December 29 each year and January 2 of each subsequent year." *Id.*

At oral argument, respondents contended that this case is not moot because the ALJ ruling in a similar dispute between these same parties regarding the 2012 captivity license would have precedential value in future cases, so this Court should address the issue now to ensure that the law is not misapplied in the future. Yet the ALJ's ruling in the 2012 case is not before us in this appeal, and the particular issue of a captivity license for an opossum for the New Year's Possum Drop event will not recur due to North Carolina General Statute § 113-291.13. *See id.* Respondents would like for us to issue a broad pronouncement that PETA does not have standing

to address questions of the treatment of North Carolina's wildlife when proceeding in cases of this type under a theory of public trust rights, but we cannot decide this issue in this case because it is moot.

Furthermore, at oral argument, petitioners argued that this issue is not moot since someone may seek a captivity license for some other type of animal which is not exempted from the laws protecting wildlife for a similar "drop" event on New Year's Eve somewhere in North Carolina in the future, so this situation could then be repeated, and thus we should address it, lest it evade review. But there is no indication in our record of any prospect of similar issues arising with other animals which are still protected by North Carolina's wildlife laws and regulations, and we find this possibility entirely too speculative. During this time period each year, Virginia opossums are simply not covered by any of the "statutes, rules, or regulations" of North Carolina "related to the capture, captivity, treatment, or release of wildlife[,]" *id. s*o this particular controversy is over, so long as North Carolina General Statute § 113-291.13 remains in effect.

## III.    Conclusion

Since our ruling could not have any practical effect upon the existing controversy, it is moot, and we dismiss this appeal.

DISMISSED.

Judges DAVIS and DIETZ concur.